IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GERALD MARCHELLETTA, SR., | ) | |
| GERALD MARCHELLETTA, JR., | ) | |
| CIRCLE GROUP, LLC, and | ) | |
| CIRCLE INDUSTRIES, INC., | ) | CIVIL ACTION FILE |
| | ) | |
| Plaintiffs, | ) | NUMBER 1:09-cv-3037-TCB |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is the motion of Defendant Internal Revenue Service

(the "IRS") for summary judgment [17].

## I.  Background

This lawsuit arises from four disputed Freedom of Information Act

("FOIA") and Privacy Act requests submitted by Plaintiffs to the IRS,

seeking documents collected and generated by the IRS during its criminal

investigation of Plaintiffs.

## A.   The IRS's Grand Jury Investigation

Sometime in early 2001, the U.S. Customs Service began a grand jury investigation of Plaintiff Gerald Marchelletta, Jr. in order to determine if he was involved in the illicit transfer of funds from the United States to the Bahamas.   Sometime in late 2001 or early 2002, the IRS was invited to participate in the grand jury investigation, which was later expanded to include Plaintiff Gerald Marchelletta, Sr. As discussed below, it is unclear how the IRS became a part of the grand jury investigation, but its investigation ultimately led to an indictment of the Marchellettas.

## B.   The Marchellettas' Criminal Case

On April 3, 2007, the Marchellettas, along with a third person, were indicted in this Court for conspiracy and several tax-related charges.   The case was docketed as Criminal Action File Number 1:07-cr-107-TCB.   On October 3, 2007, the Marchellettas were convicted of the conspiracy charge and several of the tax charges, and on June 30, 2008, they were sentenced.

On July 2, 2008, the Marchellettas filed an appeal with the Eleventh Circuit Court of Appeals.   On August 19, 2010, the Eleventh Circuit affirmed the Marchellettas' convictions for conspiracy to defraud the IRS; vacated their convictions for filing materially false personal income tax returns for

2

2000 and remanded for a new trial; and reversed the Marchellettas' convictions for aiding and assisting in the filing of a materially false corporate return for 2001 and remanded with the direction to enter a judgment of acquittal on this count.   On September 9, 2010, the Marchellettas filed petitions for rehearing with the Eleventh Circuit.

On October 4, 2010, the Marchellettas and the third defendant filed a motion for new trial in their criminal case.  On October 13, 2010, the Court granted the Government's unopposed motion to stay consideration of the defendants' motion for a new trial in the criminal action pending the Eleventh Circuit's decision on the Marchellettas' petitions for rehearing.

## C.    FOIA and Privacy Act Requests

After the Marchellettas were convicted in October 2007, their counsel submitted seven FOIA and Privacy Act requests to the IRS.  The requests were made on behalf of the Marchellettas and Plaintiffs Circle Group, LLC and Circle Industries, Inc., of which the Marchellettas are majority shareholders.  Marchelletta, Jr. submitted requests on April 30, May 2 and July 8, 2009; Marchelletta, Sr. submitted requests on April 29 and May 1, 2009; and the Marchellettas submitted a request on behalf of Circle Group on April 30 and on behalf of Circle Industries on May 5, 2009.  Of these

seven requests, four are in dispute. Two have been disposed of by stipulation, and the July 8 request was not pleaded in the complaint, but the parties have agreed that the July 8 request clarifies the four requests still in dispute.

The disputed requests read as follows:

(1)    A complete copy of the system of records identified as "Treasury/IRS 26.006,"[1] Form 2209, Courtesy Investigations, OP:C-Treasury/IRS, bearing the requester's name and/or account number for the years 1999 through 2008.

(2)    A complete copy of the records, documents, and information's [sic] maintained in a system of records called "Case Management and Time Reporting System," Criminal Investigation Division-Treasury/IRS 46.002[2] bearing the name and/or account number of the requester for the years 1999 through 2008.

---

[1] Treasury/IRS Systems of Records 26.006 is a system that contains information on individuals who have a delinquency or other investigation located in one IRS office, but are now living or have assets located in the jurisdiction of another IRS office. This system allows the IRS to track the assignments and progress in these investigations. The records in this system include the taxpayer's name, address, tax identification number, and asset ownership information; chronological investigative history; and where applicable, a request for preferential investigation on an earning discrepancy case.

[2] Treasury/IRS Systems of Records 46.002 is a system that consists of information on the subjects and potential subjects of criminal investigations conducted by the IRS office for criminal investigation (the "IRS-CI"). The purpose of the system is to maintain and process investigative information that identifies patterns of noncompliance with the federal laws that the IRS-CI is authorized to investigate.

The system includes the criminal investigative materials required for making a determination or other verification in the administration of tax and other federal laws under the IRS-CI's jurisdiction that are related to the processing of a case. The system also includes other management information related to a case that is used for administrative purposes.

(3)   A complete copy of the system of records identified as "Treasury/IRS 46.051" Criminal Investigation Audit Trail Records System, bearing the requester's name and/or account number for the years 1999 through 2008.

Plaintiffs' requests were submitted to the IRS office in Nashville, Tennessee. Timothy Christian is the disclosure manager of disclosure office 8, which is in the Nashville office. Disclosure office 8 manages the disclosure offices in Alabama, Arkansas, Georgia, Mississippi and Tennessee. As disclosure manager, Christian is responsible for administering the FOIA program and has been delegated the authority to make agency determinations of whether documents consisting of tax information can be released to a requester under the FOIA.

Valdine Young was assigned to process the disputed requests. She is a disclosure specialist in the IRS disclosure office in Atlanta. She started working with the IRS in 1978 and has been in the disclosure function since 1997. As part of her duties, she is responsible for responding to FOIA document requests.

## D.   The Search for Responsive Documents

Young began her search for records responsive to Plaintiffs' requests on the IRS's integrated data retrieval system ("IDRS"), which is a computer

system for maintaining tax records that enables Young to obtain visual and hardcopy access to certain taxpayer accounts. Young entered into the IRDS the command code "INOLE" (i.e., individual online-entity) to locate information on Circle Group and Circle Industries. She entered "IMFOLI(T)" (i.e., individual master file online system) to find the individual master files for each Plaintiff. Finally, Young entered "BMFOLI(T)" (i.e., business master file online system) in order to find the business master files for each Plaintiff.

When Young entered the above commands, the search results indicated that a case for Plaintiffs was assigned to the IRS Criminal Investigation field office located in Atlanta (the "IRS-CI"). Young then contacted her office's IRS-CI contact in order to determine who the special agent in charge of the investigation was so that she could contact the agent. Her office's main contact is special agent Patricia Bergstrom, who has been a special agent with the IRS-CI since 1992. Reginael McDaniel is the special agent in charge of the IRS-CI and is responsible for overseeing all criminal investigations assigned to his field office.

In May 2009, Young emailed Bergstrom, requesting her assistance in locating responsive documents and determining whether any documents

could be released to Plaintiffs.  Young provided Bergstrom with copies of

the requests and asked Bergstrom if her office maintained any records that

were responsive thereto.  Bergstrom informed Young that she was in fact

the special agent assigned to the IRS's investigation of Plaintiffs.

In late May 2009, after reviewing the FOIA requests, Bergstrom

initially advised Young that she had no records that were responsive to the

requests.  Young told Bergstrom that she was required to provide the

number of boxes in her possession related to Plaintiffs even if none of the

boxes was responsive.  Bergstrom then told Young that she had about

twenty boxes of records from her grand jury investigation of Plaintiffs.[3]

In early June 2009, Young met with Bergstrom.  Bergstrom informed

Young that because she had worked on the criminal investigation of

Plaintiffs, she was storing several boxes of records from the grand jury

investigation.  Bergstrom also told Young that she did not believe the FOIA

requests were seeking grand jury records, but rather, administrative data.

Bergstrom testified in her first declaration, filed July 9, 2010 [18], that her

determination that the FOIA requests were not seeking grand jury records

---

[3] After Plaintiffs filed this lawsuit, Bergstrom consulted with the two IRS
attorneys who were assisting the Department of Justice in this lawsuit, and they advised
Bergstrom to include in her box count those boxes containing the corporate Plaintiffs'
records.  Bergstrom then determined that she had forty-five boxes of records on all
Plaintiffs.

was reinforced by the fact that the grand jury investigatory material had either already been provided to the Marchellettas or made available to them for review during the course of the criminal proceeding.

Bergstrom also informed Young that the Marchellettas were currently appealing their criminal convictions, and she was concerned that disclosure of the materials that Plaintiffs had requested could impede the ongoing criminal investigation related to their appeal.

By letters dated June 2, 2009, Young informed the Marchellettas that she would not be able to respond to their April requests within the time prescribed by statute and thus she needed an extension of time.

On June 11, 2009, Young emailed Bergstrom, informing her that Young needed additional information in order to determine whether to withhold the responsive records on the basis that their release would harm an enforcement proceeding.  Young specifically asked for the approximate volume of records and their current location.  By letter dated that same day, Young informed Circle Industries that she would not be able to respond to its request within the time provided and asked for an extension.  By letter dated June 12, Young told Circle Group the same thing.

By letters dated July 1 and 10, 2009, Young informed Plaintiffs that she needed additional time to respond to their requests.   Young subsequently received Marchelletta, Jr.'s July 8 request that was more specific than Plaintiffs' earlier requests as to exactly what information Marchelletta, Jr. was seeking.  For example, in this request, Marchelletta, Jr. asked for documents and information related to any inquiries that Bergstrom had made or tasks she had performed related to him, including special agent reports, recommendation for prosecution reports, and tax fraud referral reports.[4]  Young forwarded this request to Bergstrom.

---

[4] The request specifically asked for, from the period January 1, 1999 through December 31, 2008,

(1) All documents and information related to any inquiries made by Special Agent Patricia Bergstrom, or tasks performed by Special Agent Patricia Bergstrom, pertaining to Marchelletta, Jr., including but not exclusively any Special Agent Reports, recommendation for prosecution reports and/or tax fraud referral reports.

(2) Any and all referrals from the U.S. Attorney's Office—N.D. Ga. [t]o DOJ-Tax with respect to the prosecution of Marchelletta, Jr.

(3) Copies of all documents and information related to any investigative workplans (Form 6085) developed by Special Agent Bergstrom and/or Special Agent Henry Chavis in the investigation of Marchelletta, Jr.

(4) Copies of all documents and information related to and including Form 6544 (Requests for Cooperating Examiner) resulting from the investigation of Marchelletta, Jr.

(5) Copies of all documents and information related to and including Form 9838 (Criminal Investigation Report Control Log) relating to the investigation of Marchelletta, Jr.

(6) Copies of all documents and information related to and including Form 6082 (Assessment   of   Closed   General/Subject   Seizure/Primary/Subject

Based on this more detailed request, Bergstrom determined that some of the records sought by Plaintiffs were grand jury investigative materials. She determined and advised Young that the records were subject to the grand jury confidentiality rules and the deliberative process, attorney-client and attorney work-product privileges. Bergstrom also believed that the administrative documents were not discoverable because the criminal proceeding was ongoing, as the Marchellettas' criminal appeal was still pending, and that release of the records in her possession could interfere with the ongoing case. Consequently, Bergstrom advised Young that none of the responsive documents should be released to Plaintiffs.

As for the number of documents that were responsive to the July request, Bergstrom told Young that she had approximately three boxes

---

Investigation Narrative Appraisal) relating to the investigation of Marchelletta, Jr.

(7) Copies of all documents and information related to the Special Agent in Charge, N.D. GA.—Atlanta, referral authority for the prosecution recommendation to the DOJ-Tax Division for Marchelletta, Jr.

(8) Copies of all documents and information related to and including Criminal Tax Counsel's criminal evaluation report regarding Case No. 1:07-CR-107-TCB in the Northern District of Georgia and/or Marchelletta, Jr.

(9) Copies of all documents and information related to and including Forms 5043 and 5043A (Criminal Investigation monthly activity reports) relating to the investigation of Marchelletta, Jr.

(10) Copies of all documents and information related to and including Form 4930 used to initiate general investigations and/or primary investigations of Marchelletta, JR. [and]

(11) Copies of all documents and information related to and including Form 211's filed by or on behalf of Shawn Andrew McBride, account number XXX.

responsive to the first item in the July 8 request and 195 pages responsive to the other items. Once Bergstrom actually obtained the documents that were responsive to items two through eight in the July request, she had only fifty-six pages, not 195 as she had estimated.

On or about July 17, 2009, Young received a memo from the IRS-CI, which was signed by McDaniel, stating that the IRS-CI had reviewed the records requested in Plaintiffs' April and May 2009 requests and that their release could interfere with pending or prospective criminal proceedings and would jeopardize IRS-CI's ability to enforce the Internal Revenue Code. The document specifically recommended that all of the documents be withheld under FOIA exemptions 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(C), (b)(7)(E), and (b)(3) in conjunction with 26 U.S.C. § 6103(b)(2).

Based on the IRS-CI's memo, Young determined that the responsive documents should be withheld in full under FOIA exemptions 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(E), (b)(7)(F), and (b)(3) in conjunction with 26 U.S.C. §§ 6103(b)(2)(A) and (e)(7). In order to withhold the documents on these bases, Young needed and requested from Bergstrom on July 23, 2009 the approximate volume and location of the responsive records. By letters

dated July 23 and 30, Young asked Plaintiffs for additional time to respond to their April and May requests.

On August 6, 2009, Young again asked Bergstrom for the estimated number and location of the records.  Bergstrom responded that she had approximately twenty boxes of records from her grand jury investigation, but that none of these contained documents that were responsive to the Marchellettas' April and May requests.  However, Bergstrom informed Young that to the extent Plaintiffs were seeking the grand jury records, that information was protected grand jury information.  Bergstrom also recommended to Young that the administrative files be withheld in full pursuant to the FOIA exemptions that protect the release of documents that could compromise ongoing law enforcement actions, i.e., the Marchellettas' appeal of their criminal convictions.

By letters dated August 19, 2009, Young responded to Plaintiffs' April and May requests.  She stated that approximately twenty boxes of documents responsive to the requests had been located but were being withheld under the FOIA exemptions 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(E), (b)(7)(F), and (b)(3) in conjunction with 26 U.S.C. §§ 6103(b)(2)(A) and (e)(7).  By letter dated September 23, 2009, Young responded to

Marchelletta, Jr.'s July request, stating that approximately three boxes and 195 pages of documents had been located but were being withheld under the FOIA exemptions 5 U.S.C. §§ 552(b)(5), (b)(7)(A), (b)(7)(C), (b)(7)(E), and (b)(3) in conjunction with 26 U.S.C. §§ 6103(b)(2) and (e)(7) and Fed. R. Crim. P. 6(e).  Young prepared these letters for signature by Christian, who relied on Young's estimate of the number of boxes, as Young was in Atlanta where the documents were located.

### E.    The Current Lawsuit

On October 30, 2009, Plaintiffs filed this action, contending that the IRS violated both the FOIA and the Privacy Act when it failed to produce any documents contained in the twenty boxes of records determined to be responsive to their April and May requests.  Plaintiffs also aver that they are entitled to attorneys' fees under both statutes.

In November 2009, Deborah Lambert-Dean, who is with the IRS Office of Chief Counsel (Procedure and Administration), told Bergstrom that Plaintiffs had filed a FOIA lawsuit.  Bergstrom subsequently briefed Dean and Melissa Segal (also with the IRS Office of Chief Counsel and assigned to the case) on her grand jury investigation of Plaintiffs, at which point Bergstrom determined and told Dean and Segal that she had forty-

five boxes from that investigation, not just twenty.  Bergstrom also told
Dean and Segal that there were other documents in addition to the forty-
five boxes that were generated during her investigation.

Bergstrom, Dean, Segal, and Carmen Banerjee (an attorney with the
Tax Division in the Department of Justice who is representing the IRS in
this action) determined that the IRS would consider all documents
associated with the grand jury investigation to be responsive to Plaintiffs'
requests.  They also decided that Bergstrom would send all documents
responsive to the April, May and July requests to Plaintiffs that did not fall
within the confidentiality provisions of Fed. R. Crim. P. 6(e).[5]
Consequently, from December 2009 to June 10, 2010, Bergstrom provided
Dean and Segal with the non-grand jury documents that were responsive to
Plaintiffs' FOIA requests, which was approximately 1170 pages of
documents.  The DOJ then released to Plaintiffs the documents that were
not protected by another FOIA exemption.

Bergstrom, Dean, Segal and Banerjee further determined that even
though everything in the forty-five boxes in Bergstrom's possession had
either been provided or made available to the Marchellettas during the

---

[5] Bergstrom testified in her first declaration that she did not provide any of the
data protected by Rule 6(e) to Dean and Segal because they were not persons designated
as eligible to access the grand jury material.

criminal proceeding, they would provide the information to Plaintiffs again. Thus, in mid-June 2010, Bergstrom made the grand jury material that had already been provided or made available to the Marchellettas (a total of forty-five boxes containing approximately 89,552 pages) available for inspection and copying.

Thus, there are two classes of documents still at issue, i.e., documents the IRS will not release to Plaintiffs either in full or in part because they allegedly fall within a FOIA exemption: (1) the non-grand jury documents that are not exempted under Rule 6(e) but fall within another FOIA exemption, and (2) the grand jury documents protected by Rule 6(e) and other FOIA exemptions.   There are approximately 980 non-grand jury pages that are either being withheld in full or in part, and approximately 2,690 grand jury pages that are being withheld in full.

On July 9, 2010, the IRS filed a motion for summary judgment, contending that Plaintiffs' FOIA claims fail as a matter of law [17].   On September 2, the IRS filed a supplemental brief in support of its motion [29]. On September 15, Plaintiffs responded [31], and on November 9, the IRS filed its reply [38].

## II.   Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.*

"Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993). The Court reviews an agency's decision de novo, and if it finds that an exemption does not apply, the Court may order an agency to produce any improperly withheld document. 5 U.S.C. § 552(a)(4)(B).

## III. Analysis

### A. Plaintiffs' FOIA Claims

The FOIA requires a federal agency, upon a request for documents held by that agency, to make those documents promptly available unless the information therein is protected from disclosure by a statutory exemption. 5 U.S.C. §§ 552(a)(3) and (b). A plaintiff may bring a private cause of action under the FOIA in federal court to enjoin a federal agency that has improperly withheld its records. *Id.* § 552(a)(4)(B).

The agency bears the burden of showing beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1248 (11th Cir. 2008). The agency, however, need not show that its search was exhaustive, but rather may meet its burden by producing

relatively detailed and nonconclusory affidavits submitted in good faith by responsible officials. *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds*, 502 U.S. 164 (1991). "If the government agency meets its burden of proving that its search was reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." *Id.*

The FOIA also places on the agency the burden of proving that a withheld document falls within a claimed exemption. *Id.* The agency can meet this burden on summary judgment by describing the withheld documents with reasonable specificity and explaining how they fall under one of the exemptions. *Miscavige*, 2 F.3d at 368-69.

### 1.    **Bergstrom's Credibility**

In support of its motion for summary judgment, the IRS relies on two declarations filed by Bergstrom. As shown above, Bergstrom played an integral role in identifying documents responsive to Plaintiffs' requests and in identifying which documents were excluded from disclosure by a FOIA exemption. Indeed, in its reply brief the IRS states that Young relied on Bergstrom to "ascertain the nature and number of the records and to assert all exemptions on the Service's behalf."

Plaintiffs contend that Bergstrom has inconsistently testified three times as to how she became involved in the grand jury investigation and that these inconsistencies infect the credibility of her entire testimony in this case.    Plaintiffs further argue that the inconsistencies between Bergstrom's testimony at the Marchellettas' criminal trial, her first declaration filed with the IRS's motion for summary judgment, and her second declaration filed with the IRS's supplemental brief create a genuine issue of material fact as to her credibility, as the IRS relies almost exclusively upon her declarations to support its motion.    Thus, Plaintiffs assert that summary judgment is improper.

During the criminal trial, Bergstrom testified that her "preliminary criminal investigation was initiated based on a telephone call [she] received from Special Agent Kim Sellers of the Customs Service."    In her first declaration, Bergstrom testified that the IRS-CI was "contacted by the United States Attorney's office in Atlanta who requested that we participate in the grand jury investigation.   The [Special Agent in Charge], Andre Martin, reviewed and analyzed financial and other relevant information that had been provided with the request and determined that [IRS-CI's] participation was warranted . . . .   In early January 2002, I was assigned to

the criminal tax investigation based on this grand jury request." Finally, in her second declaration, Bergstrom testified that she was "initially contacted, verbally, sometime in January 2002, by Assistant United States Attorney (AUSA) Daniel Griffin, who asked if, based on information that he believed showed the potential for criminal violations of Title 26, [she] would be interested in participating in the Marchelletta grand jury investigation."

Plaintiffs contend that these inconsistencies in how and when Bergstrom became a part of the grand jury investigation of Plaintiffs are material because they impeach her credibility, which is critical to the IRS's defense, as the IRS is relying upon her to identify the nature and number of the undisclosed documents, many of which Plaintiffs contend Bergstrom is the only one to have seen.[6]   Consequently, Plaintiffs conclude that Bergstrom's credibility is a genuine issue of material fact and that summary judgment therefore is improper.

The IRS does not directly respond to Plaintiffs' arguments that the inconsistencies in Bergstrom's testimony impeach her credibility and thus

---

[6] Plaintiffs point to Bergstrom's testimony in her first declaration that she did not provide any of the material protected by Rule 6(e) to Dean and Segal of the IRS chief counsel's office because they were not persons designated to view the grand jury material.

preclude the grant of its motion for summary judgment.  Nor does the IRS adequately explain the inconsistencies in Bergstrom's testimonies as to how she became involved in the grand jury investigation and their impact on the Rule 6(e) exemption that Bergstrom has identified as applying.  The IRS's failure to adequately respond to Plaintiffs' arguments and address the inconsistencies is fatal to its motion.

"The district court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the jury to assess the probative value of the evidence." *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) (internal citations omitted).  Indeed, "[t]he district court must not assess the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device." *Id.* (internal quotations and citations omitted).

Consequently, "where a party opposing summary judgment alleges that the declarations upon which the motion is based are perjured, and presents evidence that could lead a reasonable person to doubt the credibility of the affiants' testimony, summary judgment should not be granted." *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987).  However, the nonmoving party must do more than

allege that the opposing party's affiant perjured himself in his affidavit; it must provide specific bases for possible impeachment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2726 (3d ed. 1998). For example, if the nonmoving party shows that "conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses." *Id.*

Plaintiffs have pointed to three different stories Bergstrom has told under oath as to how she became involved in the U.S. Customs grand jury investigation of the Marchellettas. Plaintiffs also point to an August 2002 letter from the U.S. Attorney's Office in Atlanta, which they contend is when Bergstrom was officially a part of the grand jury investigation and the Rule 6(e) confidentiality attached.

The IRS has failed to adequately explain how these statements are not inconsistent or why Bergstrom has offered three different versions. The IRS's only response to Plaintiffs' attack on Bergstrom's credibility appears in the last sentence of footnote nine on page twenty-four of its reply brief, which reads, "These are not mutually exclusive facts because Bergstrom could have been contacted by both persons in January 2002 concerning the

Customs grand jury investigation and whether the Service should consider investigating tax charges." Yet the IRS and Bergstrom still maintain that the grand jury documents from January 2002 forward cannot be disclosed to Plaintiffs based on Rule 6(e) (among other reasons) and the confidentiality Rule 6(e) imposes on grand jury documents.  The IRS's explanation is insufficient to overcome the genuine issue of the credibility of its material witness.   As Bergstrom's stories are inconsistent, and construing the evidence in favor of Plaintiffs, Plaintiffs have presented sufficient evidence "that could lead a reasonable person to doubt the credibility of the affiants' testimony." *Lodge Hall*, 831 F.2d at 81.

Moreover, as illustrated by the recitation of facts above, Bergstrom's testimony about her part in Plaintiffs' requests and searches is an integral part of the IRS's defense.  Indeed, in its reply brief the IRS states that Bergstrom was the "custodian of the records plaintiffs sought in their FOIA requests" and that as a result Young relied on Bergstrom to "ascertain the nature and number of the records and to assert all exemptions on the Service's behalf."  Thus, Bergstrom's credibility is a material fact in this case; Plaintiffs have presented evidence that she has perjured herself; and the IRS has not rebutted Plaintiffs' challenge to her credibility, e.g.,

presenting other evidence to corroborate her testimony about or adequately explaining how she became involved in the grand jury investigation.

Consequently, Plaintiffs have provided specific bases challenging the credibility of a key witness of the IRS's case, and the Court finds that it cannot resolve this genuine issue of material fact on summary judgment. *See Lodge Hall*, 831 F.2d at 81 (finding that summary judgment is inappropriate where the affidavit alleged to be perjured is an essential element of the plaintiff's case and is not corroborated by other evidence"); *Tippens v. Celotex Corp.*, 805 F.2d 949, 952-53 (11th Cir. 1986) (finding the district court's grant of summary judgment improper where the inconsistencies in a witness's testimony were evidence that impeached his memory and impaired the probative weight of his testimony and thus had to be resolved by the trier of fact); *Nilson v. Historic Inns Group Ltd.*, 903 F. Supp. 905, 909 (D. Md. 1995) (finding summary judgment improper because the depositions of the principal witnesses present[ed] conflicting versions of the facts, resolution of which required credibility determinations). The Court's decision is also consistent with the Eleventh Circuit's warning that "[s]ummary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure

only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Tippens*, 805 F.2d at 952-53.

### 2.   **Merits of Plaintiffs' FOIA Claims**

Because the Court finds that the inconsistencies between Bergstrom's testimony and declarations is sufficient to defeat the IRS's motion for summary judgment, the Court does not address the merits of Plaintiffs' FOIA claims and the IRS's arguments as to why it is entitled to summary judgment on those claims.

### B.   **Privacy Act Claims**

Plaintiffs aver in their complaint that the IRS violated the Privacy Act, 5 U.S.C. § 552a(d), by failing to produce the requested documents. The Privacy Act "governs the government's collection and dissemination of information and maintenance of its records and generally allows individuals to gain access to government records on them and to request correction of inaccurate records." *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1304 (11th Cir. 2004). Under the Act, a plaintiff may bring a civil action against an agency that fails to comply with his request, and the district court has jurisdiction to order the agency to produce agency records that were improperly withheld. 5 U.S.C. § 552a(g)(1)(B).

The IRS has failed to address Plaintiffs' claims under the Privacy Act or how its FOIA arguments also entitle it to summary judgment on Plaintiff's Privacy Act claims.  Accordingly, summary judgment on these claims is improper.

## IV.   Conclusion

Defendant Internal Revenue Service's motion for summary judgment [17] is DENIED.  This case will be placed on a four-month discovery track, and discovery will commence immediately.  All other deadlines as set forth in the Court's local rules will apply, except as modified by the Court's Instructions to Parties and Counsel [16].[7]

IT IS SO ORDERED this 20th day of December, 2010.

_____
Timothy C. Batten, Sr.
United States District Judge

_____ _____
[7] The parties are directed specifically to those portions of the Court's instructions that detail how discovery disputes and motions to compel are handled.